WILLIAMS, APPELLEE, *v.* AETNA FINANCE COMPANY, D.B.A.
ITT FINANCIAL SERVICES, APPELLANT, ET AL.

[Cite as *Williams v. Aetna Finance Co.* (1992), 65 Ohio St.3d 1203.]
(No. 91–2000—Submitted October 13, 1992—Decided December 2, 1992.)

*Richard A. Bernat* and *William H. Blessing,* for appellee.

*Dinsmore & Shohl, Mark A. Vander Laan* and *M. Gabrielle Hils,* for appellant.

*Patricia A. Walker,* urging affirmance for *amicus curiae,* Ohio Academy of Trial Lawyers.

*Jones, Day, Reavis & Pogue, Michael H. Carpenter, Darrell L. Dreher* and *Jeffrey J. Jones,* urging reversal for *amicus curiae,* Ohio Consumer Finance Association.

The appeal is dismissed as having been improvidently allowed.

MOYER, C.J., SWEENEY, DOUGLAS, H. BROWN and WALSH, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

JAMES E. WALSH, J., of the Twelfth Appellate District, sitting for RESNICK, J.

WRIGHT, J., dissenting. I am writing because I believe that the trial court will be confused and dismayed by the unfortunate disposition of this appeal. I am also writing to articulate my belief that while the issue presented is straightforward, it is too important to be ignored as it has been today.

I

Appellee, Mildred Williams, and appellant, Aetna Finance Company, d.b.a. ITT Financial Services ("ITT"), entered into two contracts in which ITT agreed to lend Williams money to pay for home improvements. ITT financed the improvements through promissory notes signed by Williams. The notes contained broad arbitration clauses that provided in part:

"[A]ny dispute, past, present, or future, between us or claim by either against the other or any agent or affiliate of the other, whether related to your loan, products you purchase from or through ITT Financial Services, or

otherwise, shall be resolved by binding arbitration * * *. We agree that the transactions between us are in interstate commerce and this agreement shall be subject to 9 U.S.C. §[§] 1–14, as amended."

The home improvements were not completed to Williams' satisfaction and she stopped paying on the notes. She then filed suit against ITT alleging civil conspiracy, breach of contract, and violations of the Ohio Consumer Sales Practices Act. Her complaint did not refer to the arbitration clause in the promissory notes.

ITT promptly filed an application to compel arbitration and to stay the court proceedings pursuant to the requirements of the Federal Arbitration Act. In her response to the application, Williams expressly contested the validity of the arbitration provision. She argued that ITT's application should be denied because "[t]he small print, forced arbitration provision is unconscionable, deceptive, and unfair. ITT's use of this small print boilerplate is, in itself, a violation of the Ohio Consumer Sales Practices Act. The provision is void and unenforceable as a matter of law."

The trial court denied ITT's application to compel arbitration and set the case for further proceedings. The court did not explain its ruling. ITT appealed to the Hamilton County Court of Appeals. The court affirmed in a brief *per curiam* opinion. It wrote that "because appellee's complaint *challenges the existence of a contract between the parties * * *,* the arbitration clause in the loan agreement may not be enforced until the question of *the existence of the contract* is resolved." (Emphasis added.)

## II

The issue on appeal to this court is whether it was proper for the trial court to deny ITT's motion to compel arbitration when the validity of the arbitration provision itself was challenged by Mildred Williams. I read today's disposition of this matter to require that the trial court first consider the narrow issue of whether the agreement to arbitrate is valid. That is the result required by the Federal Arbitration Act.

## A

The Federal Arbitration Act provides that in a transaction involving interstate commerce an agreement to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2, Title 9, U.S.Code. When such an agreement exists and a motion to compel arbitration is filed, the court must order arbitration as long as it is sure that "the making of the

agreement for arbitration or the failure to comply therewith is not in issue." Section 4, Title 9, U.S.Code. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270, the United States Supreme Court considered these provisions. The court held that when a contract contains a broadly worded arbitration clause the question of whether the entire contract is invalid due to fraud in the inducement must be decided by an arbitrator. However, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." 388 U.S. at 403–404, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277. In short, a court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Id.* at 404, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277. Conformance with the Federal Arbitration Act was expressly required of the state courts in *Southland Corp. v. Keating* (1984), 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1.

In *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth* (1985), 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444, the Supreme Court commented on the procedure that lower courts must follow in ruling on motions to compel arbitration:

" * * * [T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" 473 U.S. at 626, 105 S.Ct. at 3353, 87 L.Ed.2d at 454–455. The court explained that even when the rights asserted by the party opposing arbitration are based on state statutory rights, the broad provisions of the Federal Arbitration Act apply. *Id.* at 626, 105 S.Ct. at 3354, 87 L.Ed.2d at 455. The justices cautioned, however, that the courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Id.* at 627, 105 S.Ct. at 3354, 87 L.Ed.2d at 455.

## B

The court of appeals below erred in resting its judgment on an incorrect statement of the law. Contrary to the court's opinion, when there is an enforceable arbitration provision, questions regarding the validity of *the contract* are to be decided by an arbitrator. *Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277.

In response to ITT's application to compel arbitration, however, Williams explicitly challenged the validity of *the arbitration clause*. Williams argued

that the arbitration clause was "unconscionable, deceptive, and unfair." Under the United States Supreme Court cases construing the Federal Arbitration Act, Williams' challenge must be dealt with by the trial court prior to deciding whether to compel arbitration. If the court finds that the arbitration clause is valid, it must compel arbitration. If the clause is not valid, the court must deny arbitration; only then can it consider issues concerning the contract generally.

To interpret the Act otherwise would render the "saving clause" in Section 2, Title 9, U.S.Code a nullity. The clause states that an arbitration provision is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." In *Prima Paint* the court noted that: "As the 'saving clause' in § 2 indicates, the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so. To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract—a situation inconsistent with the 'saving clause.'" 388 U.S. at 405, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277, fn. 12. While the validity of the entire contract is left to the arbitrator to decide, the validity of the arbitration agreement itself is "saved" for the court's decision by Section 2 of the Act.

## C

No one questions the increasing importance of arbitration as a method of dispute resolution. The number of commercial arbitrations grows each year. Arbitrations initiated with the American Arbitration Association, for example, grew from 6,140 in 1980 to 12,350 in 1989. Hoeniger, Commercial Arbitration Handbook (1991) 1–1. The record in this case shows that as of June 1990 appellant ITT alone had filed eighty-seven Hamilton County delinquent loan cases with the National Arbitration Forum, Inc.

This court has stressed the important role arbitration should play in dispute resolution. As long ago as 1954 we wrote that "[i]t is the policy of the law to favor and encourage arbitration * * *." *Campbell v. Automatic Die & Products Co.* (1954), 162 Ohio St. 321, 329, 55 O.O. 195, 198, 123 N.E.2d 401, 405; see, also, *Bellaire Bd. of Edn. v. Paxton* (1979), 59 Ohio St.2d 65, 70, 13 O.O.3d 58, 61, 391 N.E.2d 1021, 1024 ("[w]e endorse the policy in favor of enforcing arbitration contracts to promote speed and efficiency and to lessen the burdens on the court system"). But to encourage arbitration, only to decline to provide guidance on such a basic issue as that presented in this case is to avoid our judicial responsibilities. If we desire effective and efficient dispute resolution we must act to clarify arbitration law when the need and opportunity to do so presents itself. This is such a time.

## III

In her reply to ITT's motion to compel arbitration Williams challenged the validity of the arbitration provision. Under controlling federal law the first issue the court must rule on when there is a broad arbitration provision is the validity of the agreement to arbitrate.

While today's disposition appears to mean that the court of common pleas should conduct a hearing on the limited issue of whether the arbitration agreement itself is invalid, our dismissing this appeal lets stand a court of appeals opinion that misstates the law. I would join in an opinion affirming the court of appeals' judgment but correcting and clarifying the basis for its decision.

HOLMES, J., concurs in the foregoing dissenting opinion.