**CROSS, a Minor, By and Through Her Mother and
Next Friend, Karen CROSS, et al., Appellants,**

**v.**

**CARNES, a Minor, et al., Appellees.**

[Cite as *Cross v. Carnes* (1998), 132 Ohio App.3d 157.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 97–T–0206.

Decided Dec. 24, 1998.

158

**160**

*Thomas E. Schubert,* for appellants.

*J. Walter Dragelevich,* for appellees Corinna Carnes and Patti Carnes.

*Jones, Day, Reavis & Pogue* and *Robert W. Hamilton,* for appellees Sally Jessy Raphael and Multimedia Entertainment.

CHRISTLEY, Judge.

Appellants, Heather Cross, a minor, by and through her mother and next of kin, Karen Cross, appeal from the judgment of the Trumbull County Court of Common Pleas that granted the motion of appellees, Multimedia Entertainment and Sally Jessy Raphael, to stay the proceedings below pending arbitration.[1] For the reasons that follow, we affirm the trial court's judgment.

On April 26, 1996, appellants filed a complaint sounding in tort in the Trumbull County Court of Common Pleas. In addition to appellees, the complaint named

---

1. Appellants are residents of Trumbull County, Ohio. Appellees produce the Sally Jessy Raphael television show in New York, New York.

the minor Corinna Carnes and her mother, Patti Carnes, as defendants in the action.[2]

The complaint contained two claims for relief arising out of the minor appellant Heather Cross's appearance on the Sally Jessy Raphael television show produced and taped in New York: defamation and fraud or fraudulent concealment. In the complaint, appellants alleged that appellees fraudulently concealed the fact that the show was entitled "Teen Girl Bullies" and that Heather Cross would be falsely portrayed as such a bully. The complaint also alleged that appellees republished certain false accusations about Heather Cross made by Corinna and Patti Carnes on national television, thereby subjecting Heather Cross to ridicule, hatred and contempt.

On June 13, 1996, appellees moved the court pursuant to R.C. 2711.02 to stay the proceedings pending arbitration, asserting that the parties had a prior written agreement to arbitrate the claims. Appellees also invoked the provisions of the Federal Arbitration Act of 1925, Section 1 *et seq.*, Title 9, U.S.Code.

As evidence of the prior written agreement to arbitrate, appellees attached a one-page document entitled *"SALLY JESSY RAPHAEL [trademark symbol] CONSENT AND RELEASE."* The form contained six paragraphs of text, displayed in a normal, readable font. The form indicated that the signatory agreed to, among others: (1) appear as a guest on the Sally Jessy Raphael show, (2) waive any right to review, inspect or approve of the subject matter of the show, (3) release appellees from any defamation or other claim arising out of the guest's appearance on the show, and (4) arbitrate any dispute arising out of the consent and release form and/or the guest's appearance on the show.

Specifically, the exact wording of the arbitration provision was:

"Any dispute arising out of this RELEASE, and/or of my appearance on SALLY JESSY RAPHAEL [trademark symbol] will be resolved by binding arbitration before a single arbitrator acting under the rules of, and appointed by, the American Arbitration Association. The arbitration will take place in New York City and will be governed by the procedural and substantive law of New York."

The form was signed by appellant Karen Cross on behalf of her daughter. Karen Cross also signed her name in a second place, indicating that she consented to the terms of the release on her daughter's behalf. Above the first signature line was the following statement: "I have read this RELEASE, understand it and intend to be legally bound by it." Karen Cross also filled in

---

2. They, however, are not parties to this appeal.

several spaces requesting additional biographical information, such as her address and Social Security Number.

A hearing was thereafter set to address appellees' motion. Before the hearing, appellants filed a brief in opposition to the motion. In support of their brief, appellants attached an affidavit from Karen Cross in which she asserted that one of appellees' agents misled her as to the true contents of the release form. Karen Cross stated that she informed appellees' agent that she would not be able to go to New York with her daughter because she was ill. According to Karen Cross, the agent indicated to her that she would have to sign a form authorizing her minor daughter to travel on an airplane to New York without a parent. A day or two later, a Federal Express agent[3] came to appellants' home and said that he had a form for Karen Cross to sign. The agent pointed out the two lines where she should sign, and she complied.

In her affidavit, Karen Cross asserted: "I did not have the opportunity to read the document before he left with it. He did not leave me with a copy. * * * I thought I was signing an authorization for Heather to fly to New York without her parent."

Appellants thereafter filed an amended complaint, asserting a new claim that the release form should be rescinded on the grounds of lack of assent to the terms of the release, including the arbitration clause. The record reveals that the first hearing on the motion to stay the proceedings was held before a magistrate on October 31, 1996. Although we do not have any transcripts of that hearing, appellants' posthearing brief reveals that the court only entertained legal arguments from the parties based on the assumption that the facts contained within Karen Cross's affidavit were true. Clearly, this was not an evidentiary hearing as no findings of fact were issued by the magistrate.

In this same posthearing brief, appellants argued for the first time that the release was unenforceable on the grounds of unconscionability and on the grounds that Karen Cross did not have the authority to bind her daughter to the terms of the arbitration agreement contained within the release.[4] No additional affidavits were presented to support the new claim of unconscionability; however, appellants indicated in that brief that the facts contained in Karen Cross's affidavit presented an issue of unconscionability. Appellants nevertheless re-

---

**3.** The use of the term "agent" was that of Karen Cross. There was nothing to indicate that this person was anything other than a delivery person, or that any agency existed, beyond that of a Federal Express delivery person and a sender.

**4.** From appellants' brief, it appears that it was the magistrate who conducted the October 31, 1996 hearing who actually raised the parental authority issue. The parties were apparently invited to brief the issue, hence that posthearing brief. At the same time the hearing was directed to the trial court's schedule, and the magistrate had no further involvement.

quested an evidentiary hearing to introduce evidence regarding all of the circumstances surrounding the signing of the document.

Although there is no indication that the trial court ever held appellants' requested evidentiary hearing, the record reveals that the trial court itself did hold a status conference on appellees' motion on May 20, 1997. Appellants thereafter filed a poststatus conference brief in which they indicated that no further evidentiary hearing was required on their unconscionability claim. Specifically, they stated: "The Court has before it evidence of the circumstances which led to Plaintiff Karen Cross signing the document which contained the agreement to arbitrate. (affadavit [*sic*] attached)[.]" Further, they did not renew their previous request for an evidentiary hearing. Instead, as indicated, they referred the court to Karen Cross's affidavit and attached a copy of that affidavit to the brief.

As will be discussed more fully in the body of this opinion, the trial court granted appellees' motion to stay the proceedings pending arbitration on October 7, 1997. Appellants perfected a timely appeal, asserting three assignments of error:

"[1.] The trial court erred in ruling that whether a parent can enter into a contract which would legally bind a minor child is a question for arbitration.

"[2.] The trial court erred in failing to consider and rule upon appellants' claim that the agreement to arbitrate was invalid on the ground of unconscionability.

"[3.] The trial court erred in ruling that the issue of whether the arbitration agreement was not enforcible [*sic*] on the ground of fraud is to be decided in arbitration."

As appellants' three assignments of error invoke a common legal analysis, we will initially address them in a consolidated fashion. In the case at bar, both parties concede that the Federal Arbitration Act of 1925, Section 1 *et seq.*, Title 9, U.S.Code ("the FAA") governs the instant dispute involving interstate commerce. The trial court implicitly acknowledged the same by its choice of legal authority. We agree and will proceed under the same assumption. See *Allied–Bruce Terminix Cos., Inc. v. Dobson* (1995), 513 U.S. 265, 276–278, 115 S.Ct. 834, 841, 130 L.Ed.2d 753, 765–767 (When Congress enacted the FAA, it intended to exercise its commerce powers to the full.).

The FAA provides that in a transaction involving interstate commerce, an agreement to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2, Title 9, U.S.Code; see, also, *Williams v. Aetna Fin.*

*Co.* (1992), 65 Ohio St.3d 1203, 1204, 602 N.E.2d 246, 246–247 (Wright, J., and Holmes, J., dissenting).

When a suit is brought upon any issue that is referable to arbitration under an agreement in writing for arbitration, and a party moves to stay the proceedings pending arbitration, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement * * *." Section 3, Title 9, U.S.Code.

■ While Section 3, Title 9, U.S.Code is itself not expressly binding on the states, the federal substantive law of arbitrability must be applied in state court proceedings involving interstate commerce. *Southland Corp. v. Keating* (1984), 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1, 15, fn. 10; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 455–456.[5]

In Ohio courts, R.C. 2711.02 provides virtually identical provisions for the granting of a stay pending arbitration. The Ohio statute reads:

"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement[.]" R.C. 2711.02.[6]

Thus, under either the FAA or R.C. 2711.02, when the court is presented with a motion to stay the proceedings pending arbitration, the court must as an initial matter determine if the court is satisfied that the issue involved in the action is referable to arbitration under an agreement that calls in writing for arbitration.

■ When faced with broad arbitration clauses such as the one found in the instant case, *courts are not permitted to consider allegations that the general*

---

**5.** As Justice O'Connor's dissent in *Southland Corp.* notes, there are conflicting messages as to whether the FAA's implementing procedures found in Sections 3 and 4, Title 9, U.S.Code apply implicitly to state courts as part and parcel of the federal substantive law of arbitrability. *Southland Corp.* at 22–36, 104 S.Ct. at 864–871, 79 L.Ed.2d at 19–28 (O'Connor, J., and Rehnquist, J., dissenting). This raises questions as to how to marry the federal case law interpreting those sections with the standards governing the Ohio statutes, in particular, R.C. 2711.02.

**6.** This statute also provides that an order under R.C. 2711.02 that grants or denies a stay pending arbitration is a final appealable order; hence, we have jurisdiction to hear the instant appeal.

*agreement containing the arbitration provision is invalid,* and must instead limit their inquiries to allegations that the separate arbitration agreement within the general agreement is invalid. This is what is known as the *Prima Paint* doctrine, first set forth by the United States Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (*"Prima Paint"*).[7]

In *Prima Paint,* the Supreme Court held that the terms of the arbitration clause in that case were broad enough to encompass disputes over whether the entire contract at issue in *Prima Paint* was fraudulently induced. Thus, the court held that an arbitrator rather than the court should hear the party's claim that the general agreement that contained the arbitration clause was fraudulently induced.

However, the Supreme Court noted that the courts were obligated to rule on claims that went to the *arbitration agreement* itself. The appropriate state law would then govern the determination of whether the arbitration agreement was enforceable. See *Perry v. Thomas* (1987), 482 U.S. 483, 492, 107 S.Ct. 2520, 2527, 96 L.Ed.2d 426, 437, fn. 9. In *Prima Paint,* the party protesting arbitration made no allegation directed solely at the arbitration agreement.

The Supreme Court of Ohio has essentially adopted the *Prima Paint* doctrine in the context of an R.C. 2711.02 stay. *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 692 N.E.2d 574, syllabus ("To defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced."). See, also, *Krafcik v. USA Energy Consultants, Inc.* (1995), 107 Ohio App.3d 59, 667 N.E.2d 1027.

These holdings are in keeping with the understanding that arbitration agreements are separable from the general contracts in which they are contained. *Prima Paint* at 402, 87 S.Ct. at 1805, 18 L.Ed.2d at 1276–1277; see, also, *ABM Farms* at 501, 692 N.E.2d at 577.[8] It is also in recognition of the fact that arbitration is a matter of contract, and parties cannot be required to submit to arbitration those disputes that they have not agreed to submit to arbitration.

---

7. This court and other Ohio appellate courts have applied the *Prima Paint* doctrine in the past. See *Windham Foods, Inc. v. Fleming Cos., Inc.* (May 2, 1997), Trumbull App. Nos. 96–T–5515 and 96–T–5519, unreported, 1997 WL 269387; *Weiss v. Voice/Fax Corp.* (1994), 94 Ohio App.3d 309, 640 N.E.2d 875.

8. "R.C. Chapter 2711 mirrors the federal jurisprudence in its acknowledgment of the severability of the arbitration clause from the remainder of the contract." *ABM Farms* at 501, 692 N.E.2d at 577.

*AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655.

■ Thus, when a party opposing an R.C. 2711.02 motion to stay has alleged that the separate arbitration agreement is invalid, the trial court must consider those allegations under existing state law. It may not refer those matters to the arbitrator for resolution.

■ However, R.C. 2711.02 does not necessarily require the trial court to hold an actual trial on the party's claims. *Brumm v. McDonald & Co. Sec., Inc.* (1992), 78 Ohio App.3d 96, 100, 603 N.E.2d 1141, 1143–1144. Instead, the court must simply be "satisfied" that the dispute is referable to arbitration under such an agreement. Of course, one method to ensure that the trial court satisfies itself of the validity of the arbitration agreement is to hold an evidentiary hearing on the matter. See, *e.g., ABM Farms*, 81 Ohio St.3d at 500, 692 N.E.2d at 576–577. Under the corresponding Section 3 of the FAA, a party opposing arbitration on the grounds that the arbitration agreement is invalid must show there is substance to his or her charge sufficient to warrant a judicial trial on the matter. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.* (C.A.2, 1959), 271 F.2d 402, 411.

By comparison, an R.C. 2711.03 motion to compel arbitration gives either party the right to demand a jury trial on the matters raised in the motion to compel, *if the making of the agreement for arbitration is in issue.* This latter provision corresponds to Section 4 of the FAA. Federal case law interpreting Section 4 provides that the courts should approach the matter as they would a summary judgment exercise, proceeding to trial where the party moving for the jury trial under Section 4 unequivocally denies the existence of the arbitration agreement and demonstrates sufficient facts in support of its contention to establish a genuine issue involving the making of the arbitration agreement. *Topf v. Warnaco, Inc.* (D.Conn.1996), 942 F.Supp. 762, 766–767. In this context, the court must accept the version of the facts as presented by the party moving for a jury trial. *Id.* at 768.

■ Finally, we note that the FAA, specifically Section 2, Title 9, U.S.Code, is evidence of a congressional declaration of a liberal federal policy favoring arbitration agreements. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.* (1983), 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785. Thus, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* The policy of Ohio also favors arbitration as a means to settle disputes. *ABM Farms*, 81 Ohio St.3d at 500, 692 N.E.2d at 576–577; *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711–712, 590 N.E.2d 1242, 1244–1246.

Turning now to the case at bar, we initially note that we disagree with appellants' interpretation of the trial court's October 7, 1997 judgment entry granting appellees' motion to stay the proceedings pending arbitration.

According to appellants, the trial court (1) refused to rule on the issue of whether Karen Cross had the authority to bind her daughter to the arbitration agreement, and instead held that an arbitrator must decide that issue, (2) completely failed to address appellants' claim that the arbitration agreement was unconscionable and failed to grant them an evidentiary hearing on this claim, and (3) refused to rule on appellants' claim that appellees perpetrated such fraud upon them that they did not assent to the making of the entire release in the first instance, including the arbitration provision contained within that release and, again, held that this issue was one for the arbitrator to resolve. Although appellants appear reluctant to label this third claim "fraud in the factum," we will call it the same as this is the terminology most commonly used for such a claim.

Contrary to the above alleged shortcomings, we read the trial court's judgment entry to mean that it *did* consider each of the above three claims raised by appellants but, nevertheless, found them to be without merit. On this point, we note that the trial court stated in the judgment entry that "[t]here was no substantial evidence presented before this court to indicate that the arbitration portion of the release was in any way fraudulently induced or *invalid.*" (Emphasis added.) Thus, the trial court did comply with the federal case law on arbitrability that requires the court, rather than the arbitrator, to decide whether a *valid* agreement to arbitrate exists before staying the proceedings.

When the court later stated that appellants' allegation of fraud in the inducement of the *entire* release was a question for the arbitrator, we believe that the court was merely applying the *Prima Paint* doctrine as required.[9] We believe that the same was true when the court stated that "the issue of whether a parent can enter into a contract which would legally bind a minor child, is also a question for arbitration." Again, *once* it has been established that the arbitration portion is not invalid under the *Prima Paint* doctrine, courts are prohibited from considering general attacks on the overall agreement itself. The court here made that initial determination that the arbitration clause was not invalid. Hence, it could not consider the *entire* agreement.

That being said, we will briefly review why each of appellants' three challenges to the arbitration provision itself were without merit and, thus, why the judgment

---

**9.** Although the trial court incorrectly characterized appellants' fraud claim as one of fraud in the inducement of the arbitration agreement, rather than the correct characterization of fraud in the factum, the distinction is not outcome-determinative as will be discussed further in the opinion in our analysis of the third assignment of error.

of the trial court should be upheld. The claims' order mirrors appellants' first, second and third assignments of error.

In support of their first claim that Karen Cross lacked the authority to bind her daughter to submit the case to arbitration, appellants cited several cases from New York that purportedly stand for the proposition that a minor is generally not legally bound by a contract executed by a parent on behalf of the minor. However, appellants have failed to cite any Ohio case law on this issue.

On this point, we note that appellants are unclear in their appellate brief as to what law would govern the claim. During the proceedings below, appellants appeared to advance the application of New York law on the theory that the contested arbitration provision dictated that New York law would govern the arbitration proceedings.

We agree that a potential conflict-of-law issue may have been present due to the fact that legally significant aspects of the case occurred during and as a result of the production of the contested television show in New York. For example, appellants' claim that appellees fraudulently concealed the purpose of the television show necessarily involved activities in New York. Appellants also refer in their complaint to the humiliation Heather Cross suffered at the hands of the audience during the taping of the show in New York.

Nevertheless, as this court stated in *Akro–Plastics v. Drake Industries* (1996), 115 Ohio App.3d 221, 224, 685 N.E.2d 246, 248, "[r]esort to the principles of conflict of laws is necessary only if there is an actual conflict between local law and the law of another jurisdiction." Further, the party asserting the application of the foreign law has the initial burden to demonstrate such a conflict. *Id.* Here, appellants have failed to do the same. As a result, we will apply the law of the forum state, Ohio, in our discussion of this issue.[10]

After a review of the record and the briefs of both sides, it would appear that neither party was able to locate an Ohio case directly on point on the issue of whether a parent has the authority to bind a minor child to settle his or her claims through arbitration. Nor have we been able to find the same. Appellees, however, have cited two cases from the supreme courts of other states that have held that a parent has the authority to consent to arbitration on behalf of his or her child and to bind that child to resolve his or her claims through arbitration. *Doyle v. Giuliucci* (1965), 62 Cal.2d 606, 43 Cal.Rptr. 697, 401 P.2d 1; *Leong v. Kaiser Found. Hosps.* (1990), 71 Haw. 240, 788 P.2d 164. We find these cases

---

10. We also note that appellants cited both New York and Ohio law in support of their remaining two assignments of error. Again, however, they have failed to demonstrate any conflict of law in the two jurisdictions. Thus, Ohio law will be applied throughout this opinion for the reasons stated above.

persuasive in light of Ohio's policy favoring the settlement of disputes through arbitration. *ABM Farms.*

We further note that the Supreme Court of Ohio has recently affirmed a case arising from this appellate district that offers guidance in this matter. In *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201, the Supreme Court of Ohio addressed the issue of whether a parent has the authority to bind his or her minor child to an exculpatory agreement in favor of volunteers and sponsors of nonprofit sport activities where the cause of action sounds in negligence. It answered this question in the affirmative. *Id.* at paragraph one of the syllabus.

This holding leads us to believe that our conclusion, that a parent has the authority to bind his or her child to a resolution of the child's claims through arbitration, is correct under Ohio law. In so holding, we note that the parent's consent and release to arbitration only specifies the forum for resolution of the child's claim; it does not extinguish the claim. Logically, if a parent has the authority to bring and conduct a lawsuit on behalf of the child, he or she has the same authority to choose arbitration as the litigation forum. Appellant's first assignment of error is without merit.

In the second assignment of error, appellants argue that the trial court failed to rule on their claim that the arbitration agreement was unconscionable and failed to grant them an evidentiary hearing to present evidence in support of their claim. However, this argument must fail as (1) the trial court implicitly addressed this claim when it ruled that there was no substantial evidence that the arbitration portion of the release was invalid, (2) the record supports the finding that there was no evidence of substance that the arbitration agreement itself was unconscionable under Ohio law, and (3) appellants in their briefing to the trial court indicated that an evidentiary hearing was not necessary, thereby, in effect, withdrawing their request. While not constituting a true waiver, such action certainly constitutes a basis for invited error.

Certainly this assignment of error raises the question of what evidentiary materials appellants were required to introduce in order to demonstrate that there was substance to their claim that the arbitration provision was unconscionable, thereby entitling them to an evidentiary hearing on the matter. *Robert Lawrence Co.*

Under Ohio law, a contract clause is unconscionable where one party has been misled as to its meaning, where a severe imbalance of bargaining power exists, or where the specific contractual clause is outrageous. *Orlett v. Suburban Propane* (1989), 54 Ohio App.3d 127, 129, 561 N.E.2d 1066, 1069–1070. Unconscionability is generally recognized to include an absence of meaningful choice on

the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294, 1299.

Unconscionability thus embodies two separate concepts: "(1) unfair and unreasonable contract terms, *i.e.*, 'substantive unconscionability,' and (2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, *i.e.*, 'procedural unconscionability[.]' * * *." *Id.*

Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible. *Id.*

However, some ancient wag once observed, "The law was never intended to protect fools from themselves." Here we conclude that appellants failed to present evidence of substance that they were entitled to an evidentiary hearing on their claim that the arbitration agreement was unconscionable. First, we note that appellants, in essence, withdrew their request for an evidentiary hearing when they indicated to the court that they were prepared to rest upon the facts as alleged in Karen Cross's affidavit. Thus, their present argument that the matter should be reversed to hold an evidentiary hearing is in the nature of invited error and without merit.

Second, a review of Karen Cross's affidavit reveals that she failed to aver any facts that directly challenged the terms of the arbitration agreement itself on the grounds of unconscionability, as defined under Ohio law above. Third, we distinguish the instant case from *Miller v. Drexel Burnham Lambert, Inc.* (C.A.11, 1986), 791 F.2d 850. Appellants cite this case for the proposition that a reversal is warranted when the lower court fails to rule on a party's somewhat ambiguous claim of unconscionability, after denying that party the opportunity to present more particularized evidence of unconscionability going to the arbitration agreement itself.

There, *Miller* was addressing a Section 4, Title 9, U.S.Code motion to compel, and the party opposing the motion to compel never waived an evidentiary hearing. Here, we are concerned with the equivalent of a Section 3, Title 9, U.S.Code motion to stay the proceedings, which section does not offer either party a potential jury trial on the motion to stay.

Again, appellants represented to the court that they were prepared to stand on the factual assertions contained within Karen Cross's affidavit, thereby effectively

withdrawing any earlier request for an evidentiary hearing on their claim. Hence, appellant's second assignment of error is without merit.

In their third and final assignment of error, appellants assert that the trial court incorrectly determined that their fraud-in-the-factum claim was one that should be decided by the arbitrator rather than the courts. However, as previously indicated, we believe that the trial court did implicitly rule on this claim, in regard to the arbitration provision, when it held that the arbitration portion of the release was valid. We also believe that this determination was correct as a matter of law.

First, we note that the Sixth Circuit Court of Appeals has rejected the notion that the type of challenge mounted against the general contract determines whether the *Prima Paint* doctrine should be applied in a given case. *C.B.S. Emp. Fed. Credit Union v. Donaldson* (C.A.6, 1990), 912 F.2d 1563. The Sixth Circuit noted:

"The central issue, reduced to its simplest, is whether [the party's] claim of fraud relates to the making of the arbitration agreement. If it does, the court should adjudicate the fraud claim. If it does not, then the Federal Arbitration Act requires that the fraud claim be decided by an arbitrator." *Id.* at 1566.

Here, appellants alleged that both the entire release and the arbitration agreement contained within that release were invalid on the grounds that fraud in the factum had occurred. Thus, to the extent that appellants alleged a fraud claim going to the making of the arbitration provision itself, the trial court was required to address the claim pursuant to the rationale expressed in *C.B.S. Emp. Fed. Credit Union.* The trial court did this indicating that the arbitration portion of the release was valid and that appellants' claim going to the entire release was one that should be addressed by the arbitrator.

Moreover, we concur with the trial court's conclusion that the subject arbitration agreement survived appellants' fraud-in-the-factum challenge. Under Ohio law, a release is obtained by fraud in the factum where an intentional act or misrepresentation of any one party precludes a meeting of the minds concerning the nature or character of the purported agreement. *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 13, 552 N.E.2d 207, 210. Thus, "when the actions or representations of the releasee so impair the mind and judgment of the releasor that he fails to understand the nature or consequence of his release, there has been no meeting of the minds." *Id.* Such device or trickery causes the release to be void *ab initio. Id.* at paragraph one of the syllabus.

However, "where there is mere misrepresentation by one party of the contents of a release, the agreement is not void for fraud in the factum when the releasor has an opportunity to read and understand the document before execution." *Id.*

at 14, 552 N.E.2d at 210. This is in recognition of the principle set forth in *Dice v. Akron, Canton & Youngstown R.R. Co.* (1951), 155 Ohio St. 185, 44 O.O. 162, 98 N.E.2d 301, that "[a] person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed." *Id.* at 191, 44 O.O. at 164, 98 N.E.2d at 304.[11]

Here, Karen Cross failed to allege that she was unable to read or understand the arbitration agreement contained within the release before she signed it. While her affidavit appeared to be somewhat conveniently vague, as appellees asserted below, the fact of the matter is that she failed to aver that she was somehow prevented from reading the release *before* she signed. The fact that the Federal Express person *left* without giving her a copy is of no import, given her failure to allege that she was in any way prevented from reading the document *before* she signed it. As a result, she failed to present evidence of substance to establish her claim of fraud in the factum in relation to the arbitration provision. Therefore, appellants' third assignment of error is also without merit.

In light of the foregoing analysis, none of appellants' three assignments of error are well taken. The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., concurs.

WILLIAM M. O'NEILL, J., dissents.

---

11. *Dice* was subsequently reversed on other grounds by the United States Supreme Court in 1952. See 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398.