OPINION
{¶ 1} Defendants-appellants Bank One Corporation and First USA Bank, National Association appeal from the January 28, 2002, Order overruling their Motion to Compel Arbitration and Stay Proceeding.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In January of 1991, appellee Patricia Nefores was issued a credit card account by FCC National Bank. In December of 1998, FCC National Bank amended the terms of appellee's Cardmember Agreement. A document captioned "NOTICE OF CHANGE IN TERMS TO YOUR FIRST CARD CARDMEMBER AGREEMENT" was allegedly sent to appellee with her account billing statement in December of 1998. The document contained an arbitration clause stating as follows:
 {¶ 3} "Immediately after the section of your Agreement entitled Collection Costs, a section will be added REQUIRING THAT ANY DISPUTE BETWEEN YOU AND US BE RESOLVED BY ARBITRATION:
 {¶ 4} "Arbitration — Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your account, including Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect at the time the Claim is filed. Rules and forms of the National Arbitration Forum may be obtained and claims may be filed at any National Arbitration Forum office, www.arb-forum.com, or P.O. Box 55405, telephone 1-800-474-2371. Any arbitration hearing at which you appear will take place at a location within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. Judgment upon any arbitration award may be entered in any court having jurisdiction.
 {¶ 5} "This arbitration agreement applies to all Claims now in existence or that may arise in the future except for: (i) Claims that you or we individually filed in a court before the effective date of the amendment of the agreement adding this arbitration agreement; (ii) Claims advanced in any judicial class actions that have been finally certified as class actions and where notice of class membership has been given as directed by the court before the effective date of the amendment of the Agreement adding this arbitration agreement; (iii) Claims by or against any unaffiliated third party to whom ownership of your account may be assigned after default (unless that party elects to arbitrate). Nothing in this agreement shall be construed to prevent any party's use of (or advancement of any Claims, defenses or offsets in) bankruptcy or repossession, replevin, judicial foreclosure or any other prejudgment or provisional remedy relating to any collateral, security or other property interests for contractural debts now or hereafter owned by either party to the other under this Agreement.
 {¶ 6} IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR A JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS), BUT EXCEPT AS OTHERWISE PROVIDED ABOVE, THOSE RIGHTS, INCLUDING ANY RIGHT TO A JURY TRIAL, ARE WAIVED AND ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION."
{¶ 7} The document further sets forth the following procedure for rejecting the new terms of the Cardmember Agreement:
 {¶ 8} "The above terms will apply to your account unless by February 14, 1999, you provide written notice which (i) states that you wish to close your account and do not wish to accept these changes and (ii) includes your name, address and account number. . . .
 {¶ 9} "Additionally, if you use your First Card account after February 14, 1999, you will be considered to have agreed to the new terms, and they will become applicable to your account even if you have sent us written notice to the contrary." Such notice was mailed to appellee along with her December, 1998, billing statement. Appellee, in the case sub judice, never sent any notice rejecting the new terms of the Cardmember Agreement. Appellee had been notified in June of 1999 that, effective September 17, 1999, her Cardmember Agreement was being modified to reflect First USA as the issuer of her first card credit card account.
 {¶ 10} After FCC National Bank merged with appellant First USA Bank, National Association, appellee's account was transferred in September of 1999 to appellant First USA Bank, National Association. Appellant First USA is a wholly owned subsidiary of appellant Bank One Corporation.
 {¶ 11} On or about January of 1999, a charge in the amount of $69.95 appeared on appellee's credit card account for membership in CTW (Children's Television Workshop) Kid's Club. Thereafter, on October 2, 2000, appellee filed a complaint against appellant BrandDirect Marketing, Inc. Appellee, in her complaint, alleged that BrandDirect Marketing caused the charge to be billed to appellee's credit card account without appellee's permission or authorization and that BrandDirect Marketing "illegally gained access to said credit card information, causing the same to be used to solicit and market CTW's Kid's Club membership and to charge plaintiff's credit card without authorization."
Subsequently, appellee, with leave of court, filed an amended complaint adding appellants Bank One Corporation and First USA Bank, National Association as defendants. Appellee's amended complaint, which contained class action allegations, alleged that the above appellants provided personal and private financial information to BrandDirect Marketing about her credit card account. Appellee specifically set forth claims against appellants Bank One Corporation and First USA Bank, National Association alleging invasion of privacy, fraud and bad faith.
 {¶ 12} Appellants Bank One Corporation and First USA Bank, National Association, on December 14, 2001, filed a Motion to Compel Arbitration and Stay Proceeding. Appellee filed a memorandum in opposition to appellants' motion on January 11, 2002, arguing, in part, that the subject arbitration clause was enforceable since "one-sided arbitration clauses forced on the consumer via an adhesion contract are unenforceable in Ohio as against public policy." Appellants filed a reply brief on January 22, 2002.
 {¶ 13} As memorialized in an Order filed on January 28, 2002, the trial court overruled the Motion to Compel Arbitration and Stay Proceeding. The trial court, in its order, specifically found, in part, that appellee's claim that "the two bank defendants converted personal information about her and sold it to the third defendant" was "not a claim relating to the agreement or plaintiff's account." Since the trial court denied the Motion to Compel Arbitration on such basis, it did not expressly find that the arbitration clause at issue was valid and enforceable. However, the trial court, in its order, expressed "skepticism" that the arbitration clause was enforceable, stating, in part, as follows:
 {¶ 14} "Although the court has assumed in the foregoing discussion that the arbitration provision is valid, the court expresses some skepticism in that regard. It was not a product of arm's-length bargaining, but was unilaterally imposed in a fine print document not designed to bring it to plaintiff's attention. In addition it contains provisions which are very one sided in favor of the draftsman, FCC. For example, it purports to require plaintiff to arbitrate all disputes, but it allows the defendant bank to pursue court remedies for repossession, replevin and prejudgment attachment for plaintiff's credit card debts."
 {¶ 15} It is from the trial court's January 28, 2002, Order that appellants now appeal, raising the following assignment of error:
 {¶ 16} "THE COURT BELOW COMMITTED REVERSIBLE LEGAL ERROR IN DENYING THE BANK DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDING IN DIRECT CONTRAVENTION OF A VALID ARBITRATION AGREEMENT BETWEEN THE PLAINTIFF AND BANK DEFENDANTS."
 I {¶ 17} Appellants, in their sole assignment of error, argue that the trial court erred in overruling appellants' Motion to Compel Arbitration and Stay Proceeding. Appellants specifically contend that there is a valid and enforceable arbitration provision contained in appellee's credit card agreement and that appellee's claims arise out of the same.
 {¶ 18} However, before addressing the merits of this appeal, we must state that the proper standard of review for this case is the "abuse of discretion" standard. Harsco Corp. v. Crane Carrier Co. (1997),122 Ohio App.3d 406, 410, 701 N.E.2d 1040 (citing Bedford City School Dist. v. Trane Co. (Mar. 20, 1997), Cuyahoga App. No. 71024, unreported. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140.
 {¶ 19} Pursuant to R.C. 2711.01(A), "[a] provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.02, as applicable to the case sub judice, states:
 {¶ 20} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."
 {¶ 21} The Ohio Supreme Court has noted that the courts, both state and federal, and the legislature all favor arbitration. See ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 500, 1998-Ohio-612,692 N.E.2d 574. In ABM Farms, Inc., supra, the Ohio Supreme Court held that "only when the making of the arbitration clause is itself at issue may the trial court proceed to try the action." ABM Farms, Inc.,81 Ohio St.3d at 501. "If the agreement to arbitrate is not at issue, then the court must compel arbitration to proceed." Smith v. Whitlatch Co. (2000), 137 Ohio App.3d 682, 685, 739 N.E.2d 857.
 {¶ 22} However, since arbitration is a matter of contract, parties cannot be required to submit to arbitration those disputes that they have not agreed to submit to arbitration. Cross v. Carnes (1998),132 Ohio App.3d 157, 165, 724 N.E.2d 828. Whether a controversy is arbitrable under the provisions of a contract is a question for the trial court to decide upon examination of the contract. Divine Constr. Co. v. Ohio-American Water Co. (1991), 75 Ohio App.3d 311, 316, 599 N.E.2d 388. As noted by the Ohio Supreme Court in Williams v. Aetna Fin. Co.,83 Ohio St.3d 464. 471, 1998-Ohio-294, 700 N.E.2d 859:
 "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." "Any uncertainty regarding the applicability of an arbitration clause should be resolved in favor of coverage." Smith, supra. at 684.
 {¶ 23} The first issue that must be addressed by this Court is whether appellee's claims against appellants in the case sub judice fall within the scope of the arbitration clause. As is stated above, the arbitration clause in this matter states, in relevant part, as follows:
 {¶ 24} "Arbitration — Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your account, including Claims regarding the applicability of this arbitration by the National Arbitration Forum . . ."
 {¶ 25} Thus, the specific issue for determination is whether appellee's claims arise from or relate in any way to her Cardmember Agreement or her credit card account.
 {¶ 26} The trial court, in overruling the Motion to Compel Arbitration and Stay Proceeding, specifically found, in part, that appellee's claim that the two banks "converted personal information about her and sold it to the third defendant [BrandDirect Marketing]" was "not a claim relating to the agreement or appellee's account. We disagree.
 {¶ 27} The Cardmember Agreement issued to appellee by FCC National Bank stated, in part, as follows:
 {¶ 28} "9. Information About You and Your Account. — We may release information to others, such as credit reporting agencies and other creditors, about our experience with your account. We may obtain a credit report on you at any time in the future to review your account. We may provide and share information about you or your account for marketing and administrative purposes with our affiliates. Any such information may be used by us or an affiliate to offer or to determine whether you qualify for other financial services. If you do not wish to have such information shared with our affiliates, other than information about transactions or experiences between you and FCC National Bank, please write to us FCC National Bank, P.O. Box 15062, Wilmington, DE 19886-5862."
 {¶ 29} Such agreement further stated that FCC National Bank, on occasion, "may make your name available to selected companies whose products and services we believe will appeal to you."
 {¶ 30} The "Notice of Change in Terms to Your First Card Cardmembes Agreement" that was sent to appellee in approximately December of 1998 that informed her of the merger between FCC National Bank and First USA Bank stated, in part, as follows:
 {¶ 31} "The section of your Agreement entitled Information About You and Your Account is being replaced with the following:
 {¶ 32} "SHARING INFORMATION WITH AFFILIATED COMPANIES: We may share information related to or derived from transactions and experiences about you and your Bank One relationships among affiliated BANK ONE CORPORATION companies and others permitted by law to receive it. We may also share other credit, application and any other information with affiliates unless you prohibit us from sharing this information by writing to us at First USA Bank, N.A., FCRA Opt Out, P. O. Box 8865, Wilmington, DE 19899. "8865. Please include your name, address, and account number with your request.
 {¶ 33} SHARING INFORMATION WITH THIRD PARTIES: From time to time, we may collect and share information about you with third parties in order to make available to you products and services we think you will like. Before doing so, we will carefully review these companies and their practices to make sure they meet our standards. You may request that your name not be given to these companies by writing us at First USA Bank, N.A. P. O. Box 8651, Wilmington, DE 19899-8651. Please include your name, address, and account number with your request."
 {¶ 34} Based upon such language, we find that appellee's allegations that appellants converted personal information about her and provided it to a third party, who may or may not be entitled to the same, relate to appellee's Cardmember Agreement. Clearly, under the terms of the Cardmember Agreement, appellant First USA Bank was authorized to release information about appellee to specified third parties.
 {¶ 35} The trial court, in its order, further overruled appellants' Motion to Compel Arbitration and Stay Proceeding on the basis that there was "nothing in the underlying agreement or FCC's unilateral amendments which includes defendants Bank One Corporation or Brand Direct in the definition of `us' as that term is used in the arbitration provisions." In essence, the trial court found that since BrandDirect Marketing and appellant Bank One were not parties to the arbitration clause, the same was not enforceable against them.
 {¶ 36} However, as noted by appellants in their brief, the Motion to Compel Arbitration in this matter did not seek to arbitrate appellee's claims against BrandDirect Marketing. Moreover, we concur with appellants that, because the arbitration clause "reflects an intent that any and all claims relating to a credit card account be arbitrated, the arbitration provision should apply indistinguishably to First USA Bank and Bank One Corporation, the parent of First USA Bank, . . . ." As recently noted by the Ohio Supreme Court:
 {¶ 37} ". . . it would be inequitable to allow an interested nonsignatory to determine the forum in which an agreement is to be interpreted when the signatories previously agreed in writing to arbitrate any controversy relating to the agreement. Accordingly, we hold that a signatory to a contract may enforce an arbitration provision against a nonsignatory seeking a declaration of the signatories' rights and obligations under the contract.
 {¶ 38} "Our holding is in keeping with this court's long history of favoring and encouraging arbitration . . . Moreover, it is consistent with Ohio's Arbitration Act, codified in R.C. Chapter 2711, which embodies the public policy of supporting arbitration." Gerig v. Kahn, 95 Ohio St.3d 478, 482, 2002-Ohio-2581, 769 N.E.2d 381. The Ohio Supreme Court, in its decision in Gerig, cited Sunkist Soft Drinks, Inc. Sunkist Growers, Inc. (C.A. 11 1993), 10 F.3d 753, in which the court held that since an arbitration agreement existed between a licensor and a parent corporation's subsidiary, the parent corporation could compel arbitration. As noted by the court in Gerig, "many federal and state courts have recognized exceptions to the rule that a person cannot be compelled to arbitrate a dispute which he did not agree to submit to arbitration." Id. at 482. Accordingly, appellant Bank One, as a non-signatory parent corporation, can enforce the arbitration clause.
 {¶ 39} Having found that appellee's claims are covered by the arbitration clause, the next issue for consideration is whether the same is enforceable. Appellee, in her brief, alleges that the subject arbitration clause is unenforceable since "one-sided clauses forced on the consumer via an adhesion contract are unforceable in Ohio as against public policy." As noted by the court in Williams, "the presumption in favor of arbitration should be substantially weaker in a case such as this, when there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature. Williams, supra at 473. In the case sub judice, the trial court, while voicing skepticism over the validity of the arbitration clause, never expressly found that the arbitration clause was or was not valid and enforceable. The trial court never needed to rule on such issue since it found that the arbitration clause in this matter did not apply to appellee's claims. For such reason, we reverse the trial court's judgment and remand this matter to the trial court for determination as to whether, as appellee alleges, the subject arbitration clause is a "one-sided" adhesion clause.
 {¶ 40} Appellants' sole assignment of error is, therefore, sustained in part.
 {¶ 41} The judgment of the Richland County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is reversed and remanded. Costs to appellee.
By Edwards, J., Gwin, P.J. and Farmer, J. concur.