[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Gayla McCann ("appellant"), appeals the order of the Cuyahoga County Common Pleas Court granting the motion to stay litigation and compel arbitration filed by the defendant-appellee Wells Fargo Financial Bank. For the reasons set forth below, this court affirms the decision of the trial court.
 {¶ 2} Appellant filed her complaint on June 3, 2002, against New Century Mortgage Corporation ("New Century"), Mortgage Analysts, LLC, Mike Brunello, Ocwen Federal Bank, FSB, Reginald Harper and Wells Fargo Financial Bank ("Wells Fargo"), (collectively referred to as "appellees.") Appellant alleged that on March 6, 2001, she was fraudulently caused to enter into a home refinancing loan agreement, for the total amount of $365,785.02 with an annual percentage rate of 12.274%, on her Brookpark home. Appellant claimed that she rescinded the agreement after March 6, 2001, but that appellee New Century failed to terminate the security interest mortgage and return money and property paid by her in connection with the transaction.
 {¶ 3} Appellant brought various tort and contract claims against the appellees and further alleged that appellees violated several federal and state statutes including the following: the Unfair Deceptive and Practices Act, R.C. 1345.01 et seq.; and the Real Estate Settlement Procedures Act, Section 2601 et seq., Title 12, U.S. Code; the Home Ownership Equity Protection Act, Section 1639 et seq., Title 15, U.S. Code; the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq.; Ohio Mortgage Broker Act, R.C. 1322.01 et seq.; the Fair Debt Collection Practices Act, Section 1692, Title 15, U.S. Code; and the Truth in Lending Act, Section 1601 et seq., Title 15, U.S. Code. Appellant demanded a trial by jury.
 {¶ 4} On August 19, 2002, Wells Fargo filed its motion to compel arbitration to dismiss or stay proceedings. In its motion, Wells Fargo argued that appellant executed separate arbitration agreements and that pursuant to the agreements, any party could elect to have any dispute relating to the loan agreement resolved by binding arbitration. Wells Fargo elected binding arbitration and requested that the trial court stay the proceedings. Further Wells Fargo claimed that it was not a part of the March 6, 2001 home refinancing loan. Rather, Wells Fargo argued that on March 16, 2001, appellant executed a loan agreement and on March 26, 2001, appellant executed a Platinum MasterCard application entering into a credit agreement, and received a Wells Fargo Financial Bank Real Estate Secured NowLine. In connection with the loan agreement and credit agreement, appellant executed separate arbitration agreements.
 {¶ 5} Appellant executed a credit agreement with an annual percentage rate of 18% and a loan agreement for the total amount of $5,184 with an annual percentage rate of 29.03%.
 {¶ 6} The one-page arbitration agreement at issue provides in pertinent part as follows:
 {¶ 7} "(1) RIGHT TO ELECT TO ARBITRATE: Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort or otherwise) arising out of or relating to your Loan Agreement, or any prior or future dealings between us, resolved by binding arbitration. A claim may include, but shall not be limited to, the issue of whether any particular Claim must be submitted to arbitration, or the facts and circumstances involved with your signing of this Agreement, or your willingness to abide by the terms of this Agreement or the validity of this Agreement. Any such election may be made at any time. * * *
 {¶ 8} "(3) UNITED STATES ARBITRATION ACT: The parties agree the Loan Agreement involves `commerce' as defined in the United States Arbitration Act (`USAA'), Title 9, United States Code, and this Agreement shall be governed by the provisions of the USAA. * * *
 {¶ 9} "(5) Limitation Of Rights: If Arbitration Is Elected By Either Party Under This Agreement: (A) You Will Not Have The Right To Go To Court Or To Have A Jury Trial; * * *
 {¶ 10} "Read This Arbitration Agreement Carefully. It Limits Certain Rights, Including Your Right To Pursue A Claim In Court And Your Right To Have A Jury Trial."
 {¶ 11} We note that in her complaint, appellant did not claim that Wells Fargo was involved in the home refinancing transaction. The record reveals that Wells Fargo was not a party to any of the documents attached to appellant's complaint, including the Mortgage, Uniform Residential Loan Application, Truth-in-Lending Disclosure Statement, or Settlement Statement. The appellant refers to this transaction in which a security interest/mortgage was created as the "mortgage loan transaction."
 {¶ 12} The appellant then claimed that each defendant conspired to defraud her. However, the appellant did not state how Wells Fargo was involved in the transaction. The appellant then claimed in her complaint that she rescinded the "mortgage loan transaction." However, Wells Fargo was not a party to the mortgage loan transaction and appellant did not claim that she had rescinded the loan agreement and credit agreement she entered into with Wells Fargo.
 {¶ 13} On November 18, 2002, the trial court issued its order wherein it stated that "based upon all the arguments and evidence presented, this court finds that the arbitration provision in the instant case is enforceable as it is plain and straightforward. Additionally, this court does not find that the arbitration provision is unconscionable. However, the court finds that defendants, Ocwen Federal Bank, FSB, New Century Mortgage Corporation, and Reginald Harper are not subject to the arbitration provision. Therefore, based on the Court's finding, this case is stayed pending the arbitration between Plaintiff, Gayla McCann and defendant, Wells Fargo Financial Bank."
 {¶ 14} Appellant submits a single assignment of error for our review, as follows:
 {¶ 15} "Whether the trial court erred in upholding the arbitration agreement."
 {¶ 16} In determining whether the trial court properly denied or granted a motion to stay the proceedings and compel arbitration, the standard of review is whether the order constituted an abuse of discretion. Strasser v. Fortney Weygandt, Inc. (Dec. 20, 2001), Cuyahoga App. No. 79621. See also, Reynolds v. Lapos Constr., Inc. (May 30, 2001), Lorain App. No. 01CA007780; Harsco Corp v. Crane Carrier Co.
(1997), 122 Ohio App.3d 406, 410. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} Further, it is well established that Ohio and federal courts encourage arbitration to settle disputes between parties. ABMFarms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 500. Indeed, there is a strong presumption in favor of arbitration. David Wishnosky v. Star-LiteBldg. Dev. Co. (Sept. 7, 2000), Cuyahoga App. No. 77245, at 9-10. In fact, "courts have characterized the FAA as expressing a congressional policy favoring enforcement of arbitration provisions. Doubts regarding such provisions should be resolved in favor of arbitration. SouthlandCorp. v. Keating, 465 U.S. 1, 10-13, 79 L.Ed.2d 1, 104 S.Ct. 852 (1984)."Fazio v. Lehman Bros. (N.D.Ohio. 2002), 2002 U.S. Dist.
 {¶ 18} First the appellant argues that she has waived her right to arbitration by filing litigation in a court of law and thus she must proceed with litigation of her claims in court. While appellant has chosen not to elect arbitration of the issues, she cannot waive Wells Fargo's right to arbitration as provided for in the arbitration agreements which state: "Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort or otherwise) arising out of or relating to your Loan Agreement, or any prior or future dealings between us, resolved by binding arbitration."
 {¶ 19} It is not clear from the record whether the trial court applied the Federal Arbitration Act ("FAA"), Title 9, U.S. Code or the Ohio Arbitration Act, R.C. Chapter 2711, when making its determination to stay litigation pending arbitration with Wells Fargo. However, the trial court did find that the arbitration provision was enforceable and not unconscionable. We find that this matter is properly governed by the FAA, as provided in the arbitration agreements.
 {¶ 20} The FAA Section 2, Title 9, U.S. Code, provides that an agreement to arbitrate is valid, irrevocable, and enforceable except where there are grounds for revocation and states as follows:
 {¶ 21} "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
 {¶ 22} The FAA, Section 3, Title 9, U.S. Code provides the trial court with the authority to stay litigation pending arbitration, as follows:
 {¶ 23} "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
 {¶ 24} Next, the appellant argues that pursuant to the FAA, Section 4, she has the right to resist arbitration and request a jury trial regarding the validity of the arbitration agreement.
 {¶ 25} The FAA, Section 4, Title 9, U.S. Code provides:
 {¶ 26} "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court * * * for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default.* * * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure [USCS Rules of Civil Procedure], or may specially call a jury for that purpose. * * *."
 {¶ 27} We question the applicability of FAA, Section 4, to this matter as Wells Fargo did not petition a United States District Court for an order directing that the arbitration proceed as agreed in the arbitration agreement. Regardless of applicability, "Federal case law interpreting Section 4 provides that the courts should approach the matter as they would a summary judgment exercise, proceeding to trial where the party moving for the jury trial under Section 4 unequivocally denies the existence of the arbitration agreement and demonstrates sufficient facts in support of its contention to establish a genuine issue involving the making of the arbitration agreement. Topf v.Warnaco, Inc. (D.Conn. 1996), 942 F. Supp. 762, 766-767." Cross v.Carnes (1998), 132 Ohio App.3d 157, 166.
 {¶ 28} We find that the appellant has not set forth sufficient facts in order to support its contention that the arbitration agreement is not in existence and valid. The appellant does not deny that she read and executed the arbitration agreements, nor has she claimed that the arbitration agreements were rescinded.
 {¶ 29} Next, the appellant argues that she requested that the trial court engage in a full evidentiary hearing in order to determine whether the arbitration agreements are valid and enforceable, and until such time arbitration cannot proceed. The FAA, Section 3 does not require a hearing, rather, it requires that the trial court be "satisfied" that the issue involved in such suit or proceeding is referable to arbitration under such an agreement. Likewise, R.C. 2711.02(B)[1] does not require the trial court to hold a hearing on the party's claims.[2] Instead, the trial court must be "satisfied" that the dispute is referable to arbitration under such an agreement.
 {¶ 30} In her appellate brief, the appellant states that she "doubts" whether the arbitration agreements are valid, however, she has not provided this court with any evidence of the invalidity or unconscionability of the agreements. Where the validity of the arbitration agreement has been challenged, the Ohio Supreme Court determined that the FAA, Section 2, Title 9, U.S. Code, requires the trial court to first consider whether the arbitration agreement is valid before compelling arbitration. Williams v. Aetna Finance Co. (1992),65 Ohio St.3d 1203, 1204, affirmed Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464.
 {¶ 31} "In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth
(1985), 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444, the Supreme Court commented on the procedure that lower courts must follow in ruling on motions to compel arbitration:
 {¶ 32} "* * * [T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the `federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" 473 U.S. at 626,105 S.Ct. at 3353, 87 L.Ed.2d at 454-455. The court explained that even when the rights asserted by the party opposing arbitration are based on state statutory rights, the broad provisions of the Federal Arbitration Act apply. Id. at 626, 105 S.Ct. at 3354, 87 L.Ed.2d at 455. The justices cautioned, however, that the courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds `for the revocation of any contract.'" Id. at 627, 105 S.Ct. at 3354,87 L.Ed.2d at 455." Williams, at 1205.
 {¶ 33} In the instant case, we note that appellant has not claimed that she rescinded the arbitration agreements, or for that matter, the underlying agreements, with Wells Fargo. According to her complaint, the appellant's claims regarding rescission involve only the mortgage loan transaction, with other defendants. Further, the appellant claimed in her complaint that each defendant fraudulently induced her into executing the unconscionable mortgage loan. She did not claim that she was fraudulently induced to enter into the arbitration agreements or that they themselves were unconscionable.
 {¶ 34} In ABM Farms v. Woods (1998), 81 Ohio St.3d 498, syllabus, the Ohio Supreme Court held that in order "to defeat a motion for stay brought pursuant to R.C. 2711.02 a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced."
 {¶ 35} The Court in ABM Farms further explained that, "a claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation, "The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution * * *." Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 14,552 N.E.2d 207, 210. In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. Beer v. Griffith (1980), 61 Ohio St.2d 119, 123, 15 Ohio Op.3d 157, 160, 399 N.E.2d 1227, 1231.* * *
 {¶ 36} "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract: Examples include a party to a release misrepresenting the economic value of the released claim, or one party employing coercion or duress to cause the other party to sign an agreement." Haller 50 Ohio St.3d at 14, 552 N.E.2d at 211.
 {¶ 37} Here, appellant has made only conclusory statements in her appellate brief that the arbitration agreements are unconscionable. Appellant then argues that the "proof" of their unconscionability is that she waived her right to arbitration by filing the instant action in the court of common pleas. We are not persuaded by this argument as stated above. Next, appellant argues, in her brief, that she rescinded the contracts with Wells Fargo. However, as stated above, it appears from the complaint that appellant rescinded only those "mortgage loan transactions." The complaint does not state that Wells Fargo was involved in the "mortgage loan transactions."
 {¶ 38} Further, appellant does not denying reading and executing the arbitration agreements. "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed. (citations omitted.) `It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written,")." ABM Farms, supra, at 12.
 {¶ 39} In Manuel v. Honda R D Americas, Inc. (S.D.Ohio 2001), 175 F. Supp. 987, the court reasoned that "Although the FAA provides that arbitration agreements are valid, such provisions may be attacked under `such grounds as exist at law or in equity for the revocation of a contract.'" 9 U.S.C. § 2. The Supreme Court has stated that general state contract principles, as opposed to state laws applicable only to arbitration provisions, may regulate, and in the appropriate case, invalidate, arbitration clauses. Doctor's Assocs., Inc.v. Casarotto, 517 U.S. 681, 684-85, 134 L.Ed.2d 902, 116 S.Ct. 1652
(1996); Andersons, Inc., v. Horton Farms, Inc., 166 F.3d 308, 322 (6th Cir. 1998). Recognized defenses include fraud, duress and unconscionability. Id. Federal courts apply state law to determine whether any of these defenses is applicable. Id.
 {¶ 40} "When a party attacks the arbitration provision by asserting that the provision itself is unconscionable, the enforceability of the arbitration provision is an issue for the Court. Id.; Stout v.Byrider, 228 F.3d 709, 714 (6th Cir. 2000) (`Claims relating to fraud in the making of the arbitration agreement are determined by the court.').* * *
 {¶ 41} "`Unconscionability is determined by reference to the relative benefit of the bargain to the parties at the time of its making, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties.' United States v. BedfordAssocs., 657 F.2d 1300, 1312-13 (2d Cir. 1981), cert. denied, 456 U.S. 914,72 L.Ed.2d 173, 102 S.Ct. 1767 (1982). To establish that an agreement is unconscionable under Ohio law, the complaining party must demonstrate: 1) substantive unconscionability, by showing that the contract terms are unfair and unreasonable, and 2) procedural unconscionability, by showing that the circumstances surrounding the contract were so unfair as to cause there to be no voluntary meeting of the minds. Collins v. ClickCamera Video, Inc., 86 Ohio App.3d 826, 621 N.E.2d 1294, 1299
(Mont. Cty. 1993)."
 {¶ 42} We find that appellant has failed to demonstrate, or set forth facts which establish, substantive unconscionability or procedural unconscionability. The trial court correctly reviewed whether the arbitration agreements were unconscionable, and in finding that they were not, correctly stayed the litigation pending arbitration. We find that the trial court did not abuse its discretion when it ordered arbitration and overruled appellant's single assignment of error.
Judgment is affirmed.
FRANK D. CELEBREZZE, JR., J., AND ANTHONY O. CALABRESE, JR., J., CONCUR.
[1] "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."
[2] With respect to this issue, we recognize that the Supreme Court of Ohio has certified a conflict between the district court of appeals and the issue is currently pending before the Court. See Maestle v. Best BuyCo. (2002), 97 Ohio St.3d 1459, 2002-Ohio-1674.