**Rachel GARRETT, Plaintiff,**

v.

**HOOTERS–TOLEDO, et al., Defendants.**

**No. 3:03CV7053.**

United States District Court, N.D. Ohio, Western Division.

Nov. 24, 2003.

Sarah A. McHugh, Maloney & McHugh, Toledo, OH, for Plaintiff.

John R. Hunt, Stokes & Murphy, College Park, GA, Corey A. Donovan, Robison, Curphey & O'Connell, James R. Knepp, II, Robison, Curphey & O'Connell, William V. Beach, Robison, Curphey & O'Connell, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a gender discrimination case in which the plaintiff, Rachel Garrett, alleges that her former employer, a Hooters restaurant in Toledo, Ohio, wrongfully discharged her after she disclosed to her manager that she was pregnant. Plaintiff has filed suit against defendants Hooters–Toledo, R.M.D. Corporation, and Chris Reil. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

Pending is defendants' motion to compel arbitration and stay these proceedings. For the following reasons, defendants' motion shall be denied.

## BACKGROUND

### A. Alternative Dispute Resolution Agreement

Plaintiff began working at Hooters restaurant in April, 1999. The restaurant did not require plaintiff to sign an arbitration agreement at that time. A couple of months thereafter Hooters adopted a policy that required any employee who wished to be considered for any job change, bonus, promotion, or transfer to accept the terms and conditions of Hooter's "Agreement to Mediate and Arbitrate Employment–Related Disputes" ("ADR Agreement").

On June 27, 1999, defendant Chris Reil, plaintiff's manager at Hooters, gave plaintiff a copy of the ADR Agreement and a binder entitled "Rules and Procedures for Alternative Resolution of Employment–Related Disputes." Plaintiff claims that she did not understand the materials, but carried them around with her in her bag for several weeks. Defendants claim that Reil offered to answer employees' questions about the agreement, but neither plaintiff nor any other employee asked any questions of him.

Plaintiff alleges that when she arrived at work on August 9, 1999, she was told that she had to sign the agreement, or she could not work another shift at Hooters. She signed the agreement. Defendants' motion seeks to enforce the agreement's mediation and arbitration provisions.

Those provisions require an employee first to file a request for mediation to resolve a claim or dispute against Hooters. Once mediation has been requested, the employee can then "initiate a resolution," which triggers the agreement's arbitration provisions. The mediation procedure, while mandatory, is not binding. The outcome of arbitration is binding. (Doc. 8, exh. A).

### B. Plaintiff's Pregnancy and Termination

Plaintiff worked at Hooters for over three years, until she was terminated on July 17, 2002. Plaintiff alleges that she was terminated by defendants because she became pregnant in June, 2002.

Plaintiff told defendant Reil that she was pregnant on June 18, 2002. She alleges that Reil did not speak to her for several days after this disclosure, and he re-

duced the number of shifts to which she was assigned to work.

Plaintiff also alleges that she requested permission to wear a modified maternity uniform, but Reil denied her request. She claims that when she complained that other employees' similar requests had been granted, Reil responded "Not while I have been here" and ordered her to go home early. (Doc. 1, at 6). Plaintiff alleges that Reil had harassed other employees who asked to wear pants during their pregnancies.

Additionally, plaintiff claims that Reil permitted plaintiff's co-workers to "harass plaintiff and make crude comments about her pregnancy." (*Id.*). Plaintiff claims that she received a phone call from Hooters management on July 16, 2002, asking her to come to a meeting the next morning. At this meeting, plaintiff was terminated. She alleges that her position was filled by a non-pregnant person.

Defendants deny plaintiff's allegations and claim that she was assigned to the same number of shifts she had been before she disclosed her pregnancy. Defendants also assert that plaintiff did not ask for permission to wear the approved Hooters maternity uniform, but instead requested to wear sweatpants. Defendants assert that Reil told her she could not wear sweatpants without a doctor's note and deny that Reil made any harassing comments to plaintiff. Defendants claim that all pregnant servers are allowed to wear the maternity uniform, but that plaintiff never asked to do so. Defendants admit that plaintiff was asked to go home after Reil denied her request to wear a modified uniform, but allege that she was asked to leave because "she threw a tantrum over being denied the right to wear sweatpants." (Doc. 7, at ¶ 7).

Defendants assert that other Hooters employees have become pregnant, worked throughout their pregnancies, and re-turned to work at Hooters after giving birth.

## STANDARD OF REVIEW

█ Through the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Congress has declared a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The FAA's purpose is "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Accordingly, "the [FAA] establishes that, as a matter of Federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

█ Notwithstanding this policy, "arbitration is a matter of contract and a party cannot be required to submit to arbitration [in] any dispute which he has not agreed so to submit." *AT & T Techs. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Under § 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

█ When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks:

first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be

nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000).

■ "In determining whether the parties have made a valid arbitration agreement, 'state law may be applied *if* that law arose to govern issues concerning the validity, revocability,' and enforceability of contracts generally, although the FAA preempts 'state laws applicable to *only* arbitration provisions.'" *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir.2002) (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). Thus, "[s]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'" *Id.* at 889 (quoting *Casarotto,* 517 U.S. at 687, 116 S.Ct. 1652).

■ In this case, the question whether the ADR Agreement is an enforceable arbitration agreement is resolved by basic, generally applicable precepts of Ohio contract law. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law. *Inland Bulk Transfer Co. v. Cummins Engine Co.,* 332 F.3d 1007, 1014 (6th Cir. 2003) (quoting *Great Earth,* 288 F.3d at 887).[1]

## DISCUSSION

Plaintiff argues that the ADR Agreement is "revocable because it is unconscionable" according to Ohio common law. (Doc. 16, at 3).

■ Under Ohio law, a contract is unconscionable where one party has been misled as to its meaning, where a severe imbalance of bargaining power exists, or where the specific contractual clause is outrageous. *Cross v. Carnes,* 132 Ohio App.3d 157, 170, 724 N.E.2d 828 (1998) (citing *Orlett v. Suburban Propane,* 54 Ohio App.3d 127, 129, 561 N.E.2d 1066 (1989)). Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (1993).

■ The unconscionability doctrine embodies two separate components: "(1) substantive unconscionability, *i.e.,* unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.,* individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible." *Jeffrey Mining Prods. L.P. v. Left Fork Mining Co.,* 143 Ohio App.3d 708, 718, 758 N.E.2d 1173 (2001). A certain "quantum" of both substantive and procedural unconscionability must be present to find a contract unconscionable. *Collins,* 86 Ohio App.3d at 834, 621 N.E.2d 1294.

### A. Substantive Unconscionability

■ "Substantive unconscionability involves those factors which relate to the *contract terms themselves* and whether *they* are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case,

---

1. The court in *Great Earth* noted that "although state law may dictate the standards for generally applicable contract defenses, such as fraudulent inducement, the FAA governs the enforceability of arbitration clauses generally ... and expresses a 'liberal federal policy favoring arbitration agreements' that must be taken into account even when state-law issues are presented." 288 F.3d at 887 (citations omitted).

no generally accepted list of factors has been developed for this category of unconscionability." *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.,* 113 Ohio App.3d 75, 80, 680 N.E.2d 240 (1996) (citing *Collins,* 86 Ohio App.3d at 834, 621 N.E.2d 1294).

### 1. Cost Splitting Provision of ADR Agreement

■ Plaintiff claims that the cost splitting provision of the ADR Agreement prevents plaintiff and other potential claimants from vindicating their statutory rights. Plaintiff argues that the expenses she would incur under the ADR Agreement's Rules and Procedures would deter her from pursuing her claim. She points to the provision requiring her to pay the lesser of one half of the expenses or the equivalent of one week's average gross compensation as cost-prohibitive because she is supporting an infant and has experienced long periods of unemployment. She also argues that the rule requiring any claims filed under the ADR Agreement to be adjudicated in Jefferson County, Kentucky, would prohibitively increase her costs because it would require her to arrange for and pay child care while she traveled out of the state.

Under current law, there is no clear standard to determine if or when arbitration can be so cost prohibitive for an individual seeking to resolve a dispute with a business that the arbitration agreement becomes unenforceable.[2]

When federal rights are at issue, the Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The Court went on to hold, though, that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92, 121 S.Ct. 513.

The Court in *Green Tree* did not, however, provide a standard for determining how detailed the showing of prohibitive expenses must be to find an arbitration agreement unenforceable. The Sixth Circuit, in *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir.2003), created its own test, concluding:

> [I]f the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the federal statute. In conducting the analysis, the reviewing court should define the class of such similarly situated

---

**2.** The Supreme Court and the Sixth Circuit recognize a "prohibitive cost" defense to a demand to enforce arbitration of federal statutory claims. *See Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir.2003). Lower courts are divided whether this defense should be analyzed in terms of unconscionability. *Compare Ting v. AT & T,* 182 F.Supp.2d 902, 933 (N.D.Cal.2002) (using substantive unconscionability) *with Camacho v. Holiday Homes, Inc.,* 167 F.Supp.2d 892 (W.D.Va.2001) (viewing the defense as one standing alone and apart from unconscionability analysis).

As I explained previously in *Rickard v. Teynor's Homes, Inc.,* 279 F.Supp.2d 910, 915–16 (N.D.Ohio 2003), I agree with the court in *Ting,* "[i]t is hard to conceive of how an adhesive contractual provision which prevents someone from effectively vindicating her non-statutory legal rights would not be substantively unconscionable." *Ting,* 182 F.Supp.2d at 933. I will, therefore, apply the same substantive unconscionability analysis to both statutory and non-statutory claims.

potential litigants by job description and socioeconomic background. It should take the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration.

*Id.* at 663.

As the court stated in *Morrison,* the costs plaintiff would incur if this claim were to be arbitrated "must be considered from the vantage point of the potential litigant .... Recently terminated, the potential litigant must continue to pay for housing, utilities, transportation, food, and other necessities of life ...." 317 F.3d at 669. Defendants argue that the ADR Agreement's cost splitting provision is fair because it requires plaintiff to pay for the *lesser* of one half of the expenses or one week's compensation toward the costs of arbitration. This argument, however, assumes that one week's compensation can and should readily be sacrificed by a plaintiff who has experienced long periods of unemployment and who must provide for herself and a child. Plaintiff's brief does not disclose her income, but she does assert that her job at Hooter's provided her substantially more money than she had ever earned. One week's compensation, therefore, imposes a high burden on a single mother experiencing intermittent periods of unemployment, and who earns less than she had while employed at defendants' restaurant.

Additionally, the ADR Agreement requires the employee to pay a one hundred dollar "Resolution Fee" to arbitrate her claim. There is no indication in the agreement that this fee is waivable if the employee cannot afford this fee. Defendants liken the fee to the filing fee required to bring a claim in court, but courts routinely waive filing fees on submission of an *in forma pauperis* applications.

Plaintiff has not estimated the amount for which she would be liable if this court were to enforce the ADR Agreement. She presumes that the cost will exceed one week's average gross cash compensation in her case (meaning that she will be liable for the equivalent of one week's compensation), and asserts that this amount will deter her, and others similarly situated, from pursuing her claim under the ADR Agreement. Plaintiff also has not provided information about the comparative costs of litigating and arbitrating her claims.

Although I find plaintiff's arguments generally persuasive, they are insufficient, in light of the present record, to establish a factual basis for substantive unconscionability of the cost splitting provision. *See Rickard,* 279 F.Supp.2d at 918; *Garcia v. Wayne Homes, L.L.C.,* No. 01 CA 53, 2002 WL 628619, at \*13 (Ohio Ct.App. Apr.19, 2002) (holding that "proof of costs alone will not invalidate an arbitration clause" and stating that, because the plaintiffs did not produce evidence of the expected cost differential between arbitration and litigation in court, the plaintiffs "failed to produce sufficient facts or allegations ... that the undisclosed costs of arbitration rendered the provision unconscionable.").

I would, if necessary, grant plaintiff leave to provide a detailed showing of the costs associated with arbitrating her claim and her personal financial record, reflecting her inability to pay those costs (and the inability of others similarly situated, according to the *Morrison* test). Because, however, I find the ADR Agreement to be substantively unconscionable on other grounds, such supplementation of the record is unnecessary.

**2. Time Limit for Filing a Claim**

 The ADR Agreement states that all claims against Hooters should be filed within ten days from the last day on which the claim arose. Claimants are required first to file a request for mediation, which is non-binding and from which lawyers are

excluded from participating. Once mediation is initiated, the claimant must "initiate a resolution" (request arbitration) within 180 days from the last day on which the claim arose, or within the time limit set forth by the appropriate government agency if the claimant has a right to file with such agency. Even if the parties are still mediating the dispute under that provision of the agreement, the claim for resolution must be filed within the arbitration time limit or it is forfeited.

These time limits are an essential part of the ADR Agreement which plaintiff was told she must accept if she wished to be eligible for any promotion, bonus, raise, or transfer. According to the agreement, if a claimant does not file a request for mediation, the claimant is expressly prohibited from bringing that claim against Hooters. Although the agreement provides that requests for mediation submitted after the ten day time limit will be considered, it is not clear on what basis such late claims will be evaluated and processed. Also, abrogation of the ten day limit does not toll the time for filing a request for arbitration, which must be done, in any event, after the request for mediation is filed.

The ten day time limit for bringing a claim is unreasonable and unfair. Few, if any potential claimants would be able to assess their situation, with or without consulting an attorney, within such time period. As a practical matter, this ten day period would be too short to enable a terminated worker to locate and meet with an attorney. This extreme limitation has no apparent justification, and, even if defendants tried to justify this draconian term, the severely adverse impact on a claimant's ability meaningfully to assess and assert her rights would greatly outweigh such justification. The sole purpose—and, in any event, the clear effect—of this limitation is to eliminate the likelihood that discharged employees will challenge their terminations, even if the ADR Agreement otherwise is reasonable and fair.

Support for this conclusion is found in the Third Circuit's recent decision in *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 266 (3d Cir.2003), in which the court held that a *thirty* day time limit in an arbitration agreement was substantively unconscionable because it was "clearly unreasonable and unduly favorable to [the employer]." In the instant case, the time limit is only *ten* days, twenty days shorter than the limit in *Alexander,* and is even more substantively unconscionable than the limitations period in that case.

### 3. Mediation Requirement

■ Even aside from the ten day limitation, the mediation requirement has other substantively unconscionable aspects. Plaintiff alleges that she was presented with a "take it or leave it" demand to sign the agreement. At the very least, this combination of coerciveness coupled with the fundamental inequality of bargaining power that exists between a lone former employee and a large, sophisticated, nation-wide employer gives rise to a need to scrutinize the ADR Agreement with particular care to ensure that the mediation requirement is not an effective barrier to redress.

A claimant's inability to be represented by counsel unfairly disadvantages her and favors the defendants. The agreement simply refers, moreover, to mediation between "the parties": there is no indication of the extent to which the parties can call witnesses, or who their representatives may be. Though defendants likewise forego representation, an imbalance may arise if the participants include company representatives, such as human relations personnel, who have experience in dealing with claims of unfair or improper treatment.

Mediation is to be conducted in Jefferson County, Kentucky, before two mediators, one of whom is to be selected by the plaintiff and the other by the defendants from a list of purportedly neutral mediators provided by the company. The likelihood that a claimant would have any basis on which to choose a mediator who might be open to her contentions is slight, if nonexistent. She would probably be as well off throwing a dart at the company's list as she would be to attempt any other method of choosing a mediator. This "trust us" aspect of the method by which mediators are selected supports the finding of unconscionability of the mediation process.

■ Forum selection clauses generally are presumed to be *prima facie* valid, but "a forum selection clause may be unconscionable if the place or manner in which arbitration is to occur is unreasonable taking into account the respective circumstances of the parties." *Comb v. PayPal, Inc.,* 218 F.Supp.2d 1165, 1177 (N.D.Cal. 2002) (internal citations omitted) (citing an unfair forum selection clause as one of several reasons to find an arbitration agreement substantively unconscionable). In the instant case, there appears to be little justification for the requirement that mediation and arbitration be conducted in Jefferson County (i.e. Louisville), Kentucky. If the term "the parties" were to be given a limited meaning, and include only the plaintiff and the defendants, no reason appears not to have the mediation conducted in Toledo.

The obligation to travel to Kentucky becomes more onerous if plaintiff were to desire to have witnesses appear on her behalf. Whether she or the company could do so is not clear from the ADR Agreement, which simply provides that the mediators would determine the format. If the parties could call witnesses, it is likely that, as a practical matter, only the company would be in a position to do so at a mediation held in Kentucky.

There can be no doubt that the mediation requirement and the ADR Agreement as a whole are written to discourage potential claimants from pursuing their claims; the agreement's rules impose burdens and barriers that would routinely deter former employees from vindicating their rights. Even if a former employee were able successfully to overcome these barriers, it appears to be very unlikely that she could prevail.

On balance, the agreement is unreasonable and unfair because it require claimants to participate in a process designed to be, and which is, excessively and unjustifiably favorable to Hooters. The requirement to mediate, which must be undertaken before arbitration can be sought, is substantively unconscionable. The unconscionability of this precondition to arbitration renders the balance of the ADR Agreement unconscionable and unenforceable.

**B. Procedural Unconscionability**

■ In determining procedural unconscionability, Ohio courts look to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Cross v. Carnes,* 132 Ohio App.3d 157, 170, 724 N.E.2d 828 (1998). "The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print ...?'" *Ohio Univ. Bd. of Trs. v. Smith,* 132 Ohio App.3d 211, 724 N.E.2d 1155 (1999) (quoting *Williams v. Walker–Thom-*

*as Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965)).

 The ADR Agreement signed by plaintiff in this case is procedurally, as well as substantively, unconscionable. Defendants wrote the ADR Agreement, which I have already decided is unreasonable and unfair, and presented it to plaintiff after she had been working for defendants for approximately three months. Plaintiff claims that she earned more money working for defendants than she had at any previous job she had held, and that she would have done anything to keep her position. Defendants told plaintiff that she must sign and accept the agreement in order to be eligible for any job change, including promotions, bonuses, or job transfers. Defendants did not explain the agreement and its implications to employees, including plaintiff, but merely suggested that they read it and ask questions if they did not understand. Plaintiff claims that she tried to read it, but did not understand either its terms or its future ramifications. Later, after plaintiff had possession of the agreement for about a month, defendants, according to the plaintiff, told her that she had to sign it or she could not work another shift. Plaintiff, accordingly, signed and accepted the agreement, though she states that she still did not understand what it meant.

Plaintiff had no opportunity to negotiate the terms of the ADR Agreement. Surely, had she been able to understand the impact of the rights she was giving up and the limitations to which she was acquiescing, plaintiff and any other person in her position would have objected to many of the provisions of the agreement. Even if she had done so, however, it is clear that plaintiff would not have been able to continue working at Hooters for very long if she had declined to accept the ADR Agreement as written and presented to her. Even if defendants had allowed her to continue working shifts as a waitress, she would have been ineligible for any raise, promotion, or transfer.

Therefore, my conclusion that the ADR Agreement is procedurally unconscionable is not reliant, as defendants claim, on whether plaintiff would certainly have lost her job had she not accepted the agreement. The unequal bargaining power between the parties, coupled with plaintiff's lack of sophistication and the clearly demonstrated pressures on her to accept the agreement, no matter what it said, make defendants' motion and its supplemental memorandum in support of its motion unpersuasive. Plaintiff's acceptance of the agreement was not freely given, and the agreement is procedurally unconscionable.

## CONCLUSION

Because it is both substantively and procedurally unconscionable, the ADR Agreement violates Ohio common law and is unenforceable.

It is therefore

ORDERED THAT defendants' motion to compel arbitration and stay these proceedings be, and hereby is, denied. A scheduling conference is set for December 12, 2003 at 8:30 a.m.

So ordered.